UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────

CASSANDRA D. RILEY-TULL,

          Plaintiff,

   -vs-

CAROLYN W. COLVIN, Commissioner of
Social Security,

          Defendant.
─────────────────────────────

**DECISION and ORDER
No. 11-CV-0595(MAT)**

## I.   Introduction

Represented by counsel, Cassandra D. Riley-Tull ("Plaintiff"), brings this action pursuant to Title II and Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income ("SSI") and disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II.  Procedural History

Plaintiff filed applications for DIB and SSI on February 26, 2009 due to irritable bowel syndrome ("IBS")[1] and asthma, with an

─────────────

[1] IBS is a common disorder affecting the colon, whereas Crohn's disease is a type of chronic inflammatory bowel disases causing inflammation of the lining of the digestive tract. See http://www.mayoclinic.org/diseases-conditions/crohns-disease/basics/definition/con-20032061. The parties appear to use the two terms interchangeably, as the Court will do throughout this Decision and Order.

alleged onset date of June 25, 2007. These claims were initially denied on August 29, 2009. T. 57-62.[2] A hearing was then conducted before an Administrative Law Judge ("ALJ") on January 26, 2011. T. 25-54. On March 11, 2011, the ALJ issued a written decision denying Plaintiff's claims for DIB benefits on the ground that she was not disabled, and dismissed Plaintiff's claims for SSI benefits because she withdrew that request prior to her hearing. T. 24. The ALJ's determination became the final decision of the Commissioner on June 20, 2011, when the Appeal's Council denied Plaintiff's request for review. T. 1-3. This action followed. Dkt. #1.

Currently pending before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##8, 13. For the reasons that follow, the Commissioner's motion is granted, and Plaintiff's motion is denied.

## III. Factual Background

### A. Medical Evidence

#### 1. Plaintiff's Health Care Providers

Plaintiff was diagnosed with Crohn's disease in 1999 and in 2000 had a bowel obstruction requiring surgery. T. 205.

From September, 1999, through July 2007, and again from September, 2009, through September, 2010, Plaintiff was a patient

---

[2] References to "T.__" refer to the pages of the administrative transcript, submitted as a separately bound exhibit in this action.

of gastroenterologist Dr. David Garson. T. 210-14; 265-274; 281-88. As of July 21, 2009, Dr. Garson could not provide a medical opinion regarding Plaintiff's ability to perform work-related activities. T. 212, 214.

Despite Plaintiff's complaints of abdominal pains and loose stools, a colonoscopy dated September 16, 2009 revealed that Plaintiff's colon was unchanged since her last examination five years prior. Dr. Garson opined that Plaintiff's "bowel sounds are probably related to mostly an irritable bowel and lactose intolerance." T. 288.

Dr. Garson examined Plaintiff again on December 3, 2009 based upon Plaintiff's complaints of abdominal pain, loose stools, and heartburn. T. 283. He noted no history of weight loss, fever, chills, or rectal bleeding. Citing the September colonoscopy, Dr. Garson noted superficial erosion at the ileocolic anastomosis, with unremarkable neoterminal ileium and remainder of the colon, and Dr. Garson concluded that Plaintiff's symptoms were likely "functional in origin," and that Plaintiff acknowledged being under increased personal stress. Id. Plaintiff was then referred for an upper GI series with small bowel follow through to complete her evaluation. T. 282-83.

In March, 2010, Dr. Garson noted that Plaintiff had been doing well on sublingual Hyomax and Colestid and that she reported bowel movements three times per day. T. 272-73. Aside from joint

stiffness and environmental allergies, Plaintiff did not have any other physical complaints at that time. T. 273. Dr. Garson noted that, "[s]ince clinically she is doing quite well, I recommend deferring [the small bowel series]" and likewise recommended discontinuing Colestid for diarrhea. T. 272.

Plaintiff underwent an upper GI and small bowel series on September 11, 2010, and met with Dr. Garson to review those results on September 27, 2010. T. 265-66. Plaintiff's results were normal and she had no signs of active Crohn's disease at that time. T. 265.

Plaintiff also saw primary care physician Dr. Pravin Mehta from March 30, 2009 through September, 2010. Dr. Mehta's treatment notes are largely illegible. T. 252-64. Dr. Mehta did complete a treating medical source opinion form, in which he stated that Plaintiff suffered from Crohn's disease and asthma, that she is able to work 4 hours per day, and that she should avoid climbing or bending, should not lift, carry, push, or pull more than ten pounds. T. 250. Plaintiff had no limitations walking, standing, sitting, or traveling, but should avoid high temperatures, skin irritants, dust, odors, and fumes, and required access to a bathroom at all times. T. 250-51.

### 2.   Consultative Examinations

On July 6, 2009, Dr. Kathleen Kelly performed a consultative examination of Plaintiff, noting her history of Crohn's disease and

-4-

asthma. T. 205. Plaintiff told Dr. Kelly that she cooked, cleaned, performed child care, and bathed/showered daily. T. 206. She reported spending time watching television, listening to the radio, reading, and socializing with friends, and had hobbies. Id. Plaintiff was in no acute distress, had normal gait and stance, could walk on her heels and toes without difficulty, and performed a full squat. T. 207. She used no assistive devices, did not need help changing, or getting on and off the examination table, and could rise from a chair without difficulty. Id.

Dr. Kelly's physical examination of Plaintiff yielded normal results in every area, including ear, nose, and throat, chest and lungs, abdomen, and neurological. T. 206-207.

Regarding Plaintiff's mental health, Dr. Kelly noted that she was dressed appropriately, maintained good eye contact, and appeared oriented in all spheres, with no evidence of hallucinations, delusions, impaired judgment, or significant memory impairment. Plaintiff had suicidal ideation in the past when she had multiple deaths in her family, and because of this Dr. Kelly recommended a psychiatric evaluation. T. 207-08.

Dr. Kelly concluded that Plaintiff should refrain from smoke and respiratory irritants and take breaks from overexertion, and to take "comfort breaks" during flare-ups of Crohn's disease. T. 208. Dr. Kelly noted "no other obvious limitation on today's exam." Id.

Plaintiff also underwent a psychiatric evaluation with Kevin Duffy, Psy. D. on July 27, 2009, which revealed that her affect, mood, and thought processes and associations were all within normal limits. T. 214-16. Plaintiff reported normal sleep, appetite, and no weight fluctuation. T. 215. She denied depressive symptomatology, recurrent thoughts of death or suicide, anxiety-related symtomatology, panic symptomatology, manic symptomatology, and thought disorder symptomatology. Her cognitive symptomology showed some short-term memory deficits and difficulty with concentration. T. 216.

Plaintiff appeared to be her stated age, was appropriately dressed, and had good personal hygiene and grooming. Id. She had normal gait, posture, motor behavior, and appropriate eye contact, was oriented to person, time, and place, and her attention and concentration were grossly in tact. Id. Though Plainitff's recent and remote memory skills were mildly impaired, her cognitive functioning was average with fair insight and judgment. Id.

Dr. Duffy concluded that Plaintiff can follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, deal appropriately with stress, manage funds, and maintain a regular schedule. T. 217-18. The results of his examination were inconsistent with any

-6-

psychiatric problems that would significantly interfere with Plaintiff's ability to function. T. 218.

### B.   Non-medical Evidence

#### 1.   Plaintiff's Testimony

Plaintiff was born on June 6, 1972, and was 38 years-old at the time of the hearing. T. 28. She had a high school equivalency diploma, and previously worked as a cashier, a daycare assistant, and a guestroom attendant at a casino. T. 30. At the time of the hearing, Plaintiff was worked for her sister as a daycare assistant up to 15 hours per week. T. 29-30.

Plaintiff testified that she became disabled on June 25, 2007, due to her Crohn's disease, asthma, and allergies, and that the symptoms of her Crohn's disease, which included cramping and using the bathroom 10-15 times per day, resulted in her inability to work full-time. T. 31-32. She further testified that she took medication that controlled her IBS symptoms and alleviated her pain. T. 42-43.

With regard to her migraine headaches, Plaintiff stated that she suffered headaches daily and that they would last for hours, however, she took medication that alleviated the symptoms. T. 32.

Plaintiff also testified that she had severe asthma, and had been using a nebulizer four times a day and a rescue inhaler daily since April, 2009. T. 38-39. She had not been hospitalized with an asthma attack in the past three-and-a-half years. T. 39. Plaintiff

told the ALJ that she cannot run, swim, shovel snow, walk long distances, or play with her children. T. 40.

Plaintiff worked part-time, received leased government housing, food stamps, Medicaid, and aid to dependent children. T. 52-53. She also received unemployment benefits from the fourth quarter of 2008 and continued to receive those benefits through the date of her hearing. T. 113-126.

### 2.   Witness Testimony

Plaintiff's ex-husband, Junior Tull, testified that he lived with Plaintiff until 2003, and prior to that he had witnessed Plaintiff's symptoms of Crohn's disease, including her using the bathroom several times each night for 10-15 minutes at a time. T. 45. He also testified that she had "excruciating pain, cramps," she had to use the bathroom after eating or taking her medicine, and that she was often fatigued. Id.

### 3.   Vocational Expert Testimony

Vocational expert Jay A. Steinbrenner ("the VE") categorized Plaintiff's past work as a cashier as semi-skilled, light-level (SVP[3] 3); her work as a daycare aide as semi-skilled, light-level

---

[3] "'SVP' stands for 'specific vocational preparation,' and refers to the amount of time it takes an individual to learn to do a given job." Urena-Perez v. Astrue, 06 CIV. 2589 JGK/MHD, 2009 WL 1726217, at *20 n.43 (S.D.N.Y. Jan. 26, 2009)(quotation omitted). "SVP uses a scale from 1 to 9 and the higher the SVP number the greater the skill required to do the job." Id. (citation omitted).

(SVP 4); and her work as room attendant/housekeeper as light/unskilled (SVP 2). T. 46.

The ALJ posited a hypothetical question to the VE, asking whether someone of Plaintiff's age, education, and work experience, with the ability to perform light work, but, because of certain impairments, had the following limitations: sit/stand option, avoid concentrated exposure to fumes, dust, odors, would be able to do posturals occasionally with no ropes or ladders, no outdoor work, would be able to perform Plaintiff's past relevant work and jobs outside of Plaintiff's past relevant work. T. 48.

The VE replied that the daycare aide job could be performed, as well as work as a cashier (SVP 2, 1.6 million jobs nationally, 8,700 jobs in the region) or as a small products assembler (SVP 2, 210,000 jobs nationally, 800 jobs in the region). T. 48-50.


## IV.  The ALJ's Decision

The ALJ applied the well-established five-step sequential evaluation to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. § 416.920. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 25, 2007. At the second step, the ALJ found that Plaintiff has the following "severe impairments": (1) asthma; (2) history of Crohn's disease; and (3) IBS. T. 14-15.

At the third step, the ALJ analyzed the medical evidence and found that Plaintiff did not have a listed impairment which would have rendered her disabled without consideration of vocational factors such as age, education, and work experience. The ALJ determined that while Plaintiff's impairments could be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent that they were inconsistent with Plaintiff's RFC. T. 20. The ALJ gave great weight to Dr. Garson's opinion that Plaintiff's symptoms of Crohn's disease were intermittent and caused by stress, and less weight to Dr. Mehta's statement that Plaintiff could only work a four-hour day. T. 22. In the ALJ's discussion of whether Plaintiff had engaged in substantial activity since June 25, 2007, he noted that although Plaintiff's receipt of unemployment benefits does not necessarily preclude a finding of disability, the inconsistency of Plaintiff certifying to the State that she is "ready, willing and able to work" while simultaneously alleging that she is unable to work for federal social security benefit purposes casts further doubt on her credibility. T. 14.

Accordingly, the ALJ moved to the fourth step, which required asking whether Plaintiff has the residual functional capacity ("RFC") to perform her past work, notwithstanding her combination of severe impairments. T. 22.

Because Plaintiff was unable to perform her past work as a housekeeper or cashier,[4] the ALJ proceeded to the fifth step, which is comprised of two parts. First, the ALJ assessed Plaintiff's job qualifications by considering her physical ability, age (35 years-old on the alleged onset date), education (high school equivalency degree)and work experience (cleaner/housekeeper, cashier, and daycare assistant). T. 23. He ALJ concluded that Plaintiff retained the ability to perform light work, with a number of additional limitations that he specified in his hypothetical to the VE.

The ALJ next determined that significant numbers jobs exist in the national economy that a person having her qualifications and RFC could perform. T. 23-24; see 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ concluded that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and that Plaintiff was not disabled. T. 24.

## V.   General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a

---

[4] The VE testified to the distinction between a cashier/checker and a cashier II, which is normally associated with smaller retail venues, as opposed to larger outlets such as Walmart, where Plaintiff was previously employed as a cashier/checker. T. 48.

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see

also <u>Mongeur</u>, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

## VI. Discussion

### A. Plaintiff's Credibility

Plaintiff first contends that the ALJ's reasoning in discrediting Plaintiff's statements was "baseless," and that he failed to provide specific reasoning to substantiate his findings. Pl. Mem. (Dkt. #9) at 8-10.

To establish disability, there must be more than subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b); <u>accord</u> <u>Gallagher v. Schweiker</u>, 697 F.2d 82, 84 (2d Cir. 1983). When a medically determinable impairment exists, objective medical

-13-

evidence must be considered in determining whether disability exists, whenever such evidence is available. 20 C.F.R. § 416.929(c)(2). If the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective medical evidence alone, consideration is given to such factors as the claimant's daily activities; the location, duration, frequency and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of medication; and any treatment or other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3); see Social Security Ruling ("SSR") 96-7p, (July 2, 1996), 1996 WL 374186, at *7. Thus, it is well within the Commissioner's discretion to evaluate the credibility of Plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of symptomatology. Mimms v. Secretary, 750 F.2d 180, 186 (2d Cir. 1984); Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

Here, the ALJ found that "[Plaintiff's] medically determinable impairments could not reasonably be expected to cause the alleged symptoms, however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the ... residual functional capacity assessment." T. 20. The ALJ explained that Plaintiff provided contradicting statements, including her

statement to Dr. Garson in March of 2010 that she had three bowel movements per day; the lack of evidence regarding the necessity of her frequent nebulizer use for her asthma; the lack of an objective record showing complaints of daily abdominal pain; lack of records alleging side effects from her medication; lack of treatment for depression; and the Plaintiff's own denial of symptoms during her psychiatric consultative examination in 2009.  Id.

The ALJ pointed out that despite Plaintiff's complaints of disabling symptoms, she "is apparently able to care for young children both at home and at work, which can be quite demanding both physically and emotionally, without any particular assistance." Id. He also noted that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual and the treatment she has received has essentially been routine and/or conservative in nature." Id. For these reasons, the ALJ's credibility assessment was proper and his conclusion that Plaintiff's subjective complaints and symptoms were not credible to the extent she claimed is supported by substantial evidence in the record.

The Court rejects Plaintiff's tandem argument that the ALJ erred in using "beliefs and information about unemployment that are not contained in the record," and that his "diatribe" regarding her receipt of unemployment benefits is irrelevant to her credibility. Pl. Mem. At 4, 7. Contrary to Plaintiff's assertion, an ALJ may

consider evidence that a claimant received unemployment benefits and/or certified that he or she  was ready, willing, and able to work during the time period for which he claims disability benefits as one factor relevant to assessing credibility. See Schmidt v. Barnhart, 395 F.3d 737, 746 (7th Cir. 2005); Andrews v. Astrue, Civ. No. 7:10-CV-1202, 2012 WL 3613078, at *12-13 (N.D.N.Y. Aug. 21, 2012); House v. Comm'r of Soc. Sec., No. 09-CV-913, 2012 WL 1029657, at *12 (N.D.N.Y. Feb. 29, 2012). The ALJ noted that the mere receipt of unemployment benefits does not preclude a finding of disability, however the inconsistency of Plaintiff's certification to the State that she was ready, willing, and able to work in order to quality for unemployment while simultaneously alleging inability to work for social security benefit purposes *casts further doubt* on the credibility of her assertions of disability. T. 14.

In any event, the fact that Plaintiff had been receiving unemployment benefits was not included in the ALJ's discussion of the objective record and the credibility of Plaintiff's subjective complaints, but was initially discussed as a preliminary matter regarding Plaintiff's sources of income and work history. T. 13-14. 20. The ALJ therefore did not, as Plaintiff contends, rely on Plaintiff's unemployment benefits as the "focal point" of his credibility assessment, and the ALJ's consideration of Plaintiff's receipt of unemployment benefits was not improper on this record.

Accordingly, the ALJ's decision contained specific reasons supported by the evidence for discounting Plaintiff's credibility, and he correctly evaluated Plaintiff's statements in making his RFC determination. T. 20; see also SSR 96-7p, supra.

### B.   Treating Source Opinion

Plaintiff next contends that the ALJ failed to properly weigh the opinion of her treating gastroenterologist, and that the ALJ failed to properly develop the record by not re-contacting Dr. Garson. Pl. Mem. 10-12, 12-15.

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C .F.R. § 404.1527(c)(2); see also Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999); Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993). An ALJ may refuse to consider the treating physician's opinion only if he is able to set forth good reason for doing so. Saxon v. Astrue, 781 F.Supp.2d 92, 102 (N.D.N.Y. 2011). The less consistent an opinion is with the record as a whole, the less weight it is to be given. Otts v. Comm'r of Soc. Sec., 249 Fed. Appx. 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. Williams v. Comm'r of Soc. Sec., 236 Fed. Appx. 641, 643-44 (2d Cir. 2007); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)). "While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence." Martin v. Astrue, 337 Fed. Appx. 87, 89 (2d Cir. 2009).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. See 20 C.F.R. § 404.1527(c). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating

physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted).

The ALJ here stated that he accorded the "greatest weight" to "the objective record and to Dr. Garson's opinion that the claimant's bowel problems are intermittent and caused by stress." T. 22.

The Court notes that the opinion of a specialist, such as Dr. Garson, about medical issues related to his/her specialty, is generally entitled to greater weight than the opinion of a non-specialist. 20 C.F.R. § 404.1527(c)(5).

Moreover, the ALJ recited extensive treatment notes by Dr. Garson on multiple visits in his decision, and considered the duration of Plaintiff's treatment as well as the fact that Dr. Garson was a specialist. T. 18-20. The ALJ cited, among other things, Dr. Garson's treatment notes stating that: (1) Plaintiff's symptoms were probably "functional in origin" and attributable to stress; (2) Plaintiff was doing "quite well" on medication and reported having three bowel movements per day; and (3) he did not feel a significant need to send Plaintiff for a small bowel series and recommended deferring the examination as of March 25, 2010. T. 272, 282. In September, 2009, Dr. Garson performed a colonoscopy and biopsy on Plaintiff, which revealed no changes in her Crohn's disease from a previous exam, and that her "bowel sounds are probably related to mostly an irritable bowel and lactose

intolerance." T. 287-88. Likewise, with regard to an examination one year later, Dr. Garson stated that small bowel follow through and upper GI were both normal, and there were no signs of active Crohn's disease as of September 27, 2010. T. 265.

Thus, the objective record clearly supports Dr. Garson's opinion, and the ALJ properly evaluated and applied the regulations. Plaintiff also complains that the ALJ did not enumerate any of the factors from the statute. Pl. Mem. 11. Her argument fails for two reasons. First, Plaintiff's assertion is belied by the record, as the ALJ did explicitly mention at least four if not all of the factors listed in 20 C.F.R. § 404.1527(c), and actually set forth the regulations themselves in establishing the framework for his opinion. Second, this Circuit does not require a "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, No 12-902-cv, 512 Fed. Appx. 67 (2d Cir. Feb. 21, 2013) (unpublished opinion).

Plaintiff next argues that the ALJ had a duty to re-contact Dr. Garson due to ambiguity in his medical opinion, in that the specialist never articulated an opinion on Plaintiff's ability to perform work-related activities, but rather opined that Plaintiff's symptoms were likely functional in origin (i.e., with no known or detectable organic basis to explain the symptoms). Pl. 12-14. She also takes issue with Dr. Garson's evaluation of her colonscopy

examinations, which, in 2009, revealed evidence of recurrent Crohn's but the colon was unchanged from a previous exam conducted over 5 years earlier, and in 2010, showed no active signs of Crohn's. Id. at 15.

An ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y. 2005); see also 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

The Court disagrees that Dr. Garson's opinion is internally inconsistent or inconsistent with the remainder of the record. The medical record, which includes multiple test results and treatment notes, overwhelmingly indicates that Plaintiff's IBS symptoms were not severe and could be controlled with medication. T. 272. Plaintiff herself stated that over-the-counter medication such as

Tylenol relieved her abdominal pain, which occurred "sometimes daily or sometimes [she] could go without pain for weeks at a time." T. 167. Significantly, Dr. Mehta, Plaintiff's primary care physician, noted that "she wasn't my patient at the time her Crohn's disease was acting up," despite that she had been Dr. Mehta's patient for approximately 18 months. T. 251. Her complaints of disabling IBS symptoms were also inconsistent with her activities of daily living, such as working part-time, cooking, cleaning, and watching her children.

The Court finds no ambiguity here as the record in this case is fully developed and adequately reflects Plaintiff's medical history, and the ALJ was under no duty to contact Dr. Garson. The ALJ considered the evidence before him, resolved inconsistencies in the record, and properly determined an RFC that was supported by substantial evidence in the record.

### C.   Severe Impairment

Finally, Plaintiff argues that the Commissioner erred in failing to find Plaintiff's headaches to be a severe impairment. Pl. Mem. 15-17.

At step two of the sequential evaluation process, an ALJ must determine if a claimant has a medically determinable impairment and whether that impairment is "severe" such that it significantly limits the claimant's physical or mental ability to do basic work activities. An impairment is "not severe" when medical and other

-22-

evidence establish a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. See 20 C.F.R. § 416.921(a); SSR 96-3p, 1996 WL 374181, at *1.

Here, the ALJ found that the objective record failed to establish any complaints of daily migraine headaches or a diagnosis of migraine headaches, and thus it was not a medically determinable impairment. T. 15.

The record contains multiple references to Plaintiff's complaints of "headaches" to Drs. Garson and Mehta and one complaint of "migraines" to Dr. Garson. T. 252, 253, 257, 260. Though Plaintiff claimed to be disabled solely due to her Crohn's disease, she also testified at her hearing that she suffered daily headaches since May, 2010 and took Maxalt, which "work[ed] fine." T. 31. More importantly, however, is the absence of any doctor-assessed limitations caused by Plaintiff's headaches from the record. Nor is any diagnosis or prescribed treatment discernable from the record, other than Plaintiff's own statements at her disability hearing. Accordingly, there no evidence indicating that Plaintiff's alleged migraines would result in work-related issues. Keeping in mind that an ALJ is entitled to rely not only what the record says, but "also on what it does not say," Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983), the Court finds the

ALJ committed no legal error in determining Plaintiff's headaches were not medically determinable or severe impairments.

## VII. Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. #8) is denied, and the Commissioner's cross-motion for judgment on the pleadings (Dkt. #13) is granted. The Complaint is dismissed in its entirety with prejudice

**ALL OF THE ABOVE IS SO ORDERED.**


S/Michael A. Telesca


_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     May 21, 2014
           Rochester, New York

-24-